SHAW, J., Concurring.
We concur in the foregoing opinion except as to the conclusion therein reached regarding the defendant Armentrout. We think the evidence is sufficient to warrant the jury in holding him criminally responsible for the acts of the other defendants under the provision of section 31 of the Penal Code that “all persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed”. Here the evidence shows that the acts done by the defendants other than Armentrout were not isolated transactions, but part of a concerted plan or scheme the object of which was to deter the public from patronizing the Rialto Theatre. Armentrout was engaged in the execution of this same plan or scheme. The fact that Ms part in it did not *776 require him personally to commit any act in violation of the ordinance would not of itself prevent his conviction of such violation. On the other hand, since the object of the plan, as above stated, was lawful, the mere fact that Armentrout had joined in its execution would not subject him to criminal responsibility for an unlawful act which some other member of the combination might do. To bring about that result it must also appear that Armentrout agreed to the commission of such unlawful act as a means of carrying out the common purpose. If he did so agree he thereby became a member of a conspiracy to do such unlawful act and assumed a criminal liability for the act when it was done by other members of the conspiracy, and such conspiracy may be proved on his trial for the offense in order to show his responsibility therefor. (People v. Ford, 25 Cal. App. 388, 397 [143 Pac. 1075]; People v. Wilson, 76 Cal. App. 688, 694 [245 Pac. 781]; People v. Holmes, 118 Cal. 444, 456 [50 Pac. 675]; People v. Creeks, 170 Cal. 368, 374 [149 Pac. 821].)
The evidence shows that the defendants other than Armentrout had been standing in front of .the Rialto Theatre and crying out daily the words which are held sufficient to warrant their conviction, for a period of four weeks or more, and during that same time Armentrout had been there almost every day, counting the patrons of the theater. According to his own testimony he had occasionally brought to the theater and delivered to Dufrane the money which was used by Dufrane to pay the other defendants for their work in selling papers, and according to police officers they saw the defendant himself on some occasions pay the others. Defendant also testified that he usually brought to the scene of action the newspapers which the other defendants attempted to use as a cloak for their violations of the ordinance. He was frequently present when they were doing the unlawful acts and therefore knew of them, and sometimes told the others what hours to work. About a month before the date of the earliest offense charged in the complaints a police officer talked to Armentrout about the other defendants, saying, “Well, can’t you keep them from hollering so loud?”, to which Armentrout replied, “They can holler just as loud as they want to.” Armentrout also admitted to a police officer that he employed and *777 paid the other defendants and brought them the papers. These circumstances tend to show a continuous course of conduct involving a violation of the ordinance, and Armentrout’s assent to such violation, and the jury having accepted the evidence and drawn an inference of his guilt from it, we cannot reverse their finding.
The judgments against all of the appellants are affirmed.
McLucas, P. J., concurred.